# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PLAINTIFF ALICIA JENKINS, NATURAL TUTRIX OF DESTINY JENKINS, MINOR, AND PLAINTIFF SHAMEKA COLBERT, NATURAL TUTRIX OF DAMIYON MINOR, CHILDREN OF DAMON ABRAHAM** | **CIVIL ACTION NO. 6:13-cv-915** |
| | **JUDGE HAIK** |
| | **MAGISTRATE JUDGE HANNA** |
| **VERSUS** | |
| **SKYLAR DORE and THE TOWN OF BALDWIN** | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

I.   Factual Allegations ................................................................................................1

II.  Argument and Allegations ......................................................................................3

     A.  Applicable Legal Standards ...............................................................................3

     B.  Plaintiffs Have Failed to State a Section 1983 Claim Against the Town ....................................................................................................................4

     C.  Plaintiffs' Section 1983 Claims Against Officer Dore Must be Dismissed ...........................................................................................................6

         1.  Plaintiffs Have No Claim Under the Eighth/Fourteenth Amendments ................................................................................................6

         2.  Officer Dore Enjoys Qualified Immunity ..........................................6

     D.  Plaintiffs' State Law Claims Must Also Be Dismissed ........................................13

III. Conclusion .............................................................................................................14

PD.9725612.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. McCaleb*,
2011 WL 672330 (E.D. Tex. 2/15/2011), *rev'd*, 480 Fed. Appx. 768 (5 Cir. 6/15/2012) ................................................................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ..........................................3

*Backe v. LeBlanc*,
691 F.3d 645 (5 Cir. 2012) .......................................................................................7

*Bennett v. City of Slidell*,
728 F.2d 762 (5 Cir. 1984) (*en banc*), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985) ......................................................................................4, 5

*Brosseau v. Haugen*,
543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) ............................................8

*Brumfield v. Hollins*,
551 F.3d 322 (5 Cir. 2008) .......................................................................................4

*Clark v. Ware*,
873 F.Supp.2d 1117 (E.D. Mo. 2012) .....................................................................12

*Deville v. Marcanetl*,
567 F.3d 156 (5 Cir. 2009) ........................................................................9, 10, 13

*Dorsey v. Portfolio Equities, Inc.*,
540 F.3d 333 (5 Cir. 2008) .......................................................................................4

*Gonzales v. Ysleta Independent School District*,
996 F.2d 745 (5 Cir. 1993) .......................................................................................5

*Graham v. Connor*,
490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ..............................6, 10, 12

*Hall v. City of Shreveport*,
45,205 (La. App. 2 Cir. 4/28/10), 36 So.3d 419, 422 ............................................13

*Jones v. Greninger*,
188 F.3d 322 (5 Cir. 1999) .......................................................................................6

*Martinez v. City of San Antonio*,
2012 WL 719920 (W.D. Tex. 3/5/2012) ..................................................................5

PD.9725612.1

*McClendon v. City of Columbia*,
    305 F.3d 314 (5 Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1232, 123 S.Ct. 1355,
    155 L.Ed.2d 196 (2003) ........................................................................................7

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ......................................4, 5

*Morgan v. Swanson*,
    659 F.3d 359 (5 Cir. 2011) (en banc), *cert. denied*, ___ U.S. ___, 132 S.Ct. 2740, 183
    L.Ed.2d 614 (2012), *and cert. denied*, ___ U.S. ___, 132 S.Ct. 2740, 183 L.Ed.2d 614
    (2012) ...............................................................................................................4, 8

*National Bi-Weekly Admin., Inc. v. Belo Corp.*,
    512 F.3d 137 (5 Cir. 2007).................................................................................3

*Poole v. City of Shreveport*,
    691 F.3d 624 (5 Cir. 2012)..........................................................................7, 8, 2

*Rakestrau v. Neustrom*,
    2013 WL 1452030 (W.D. La. 4/8/2013)............................................10, 11, 12, 14

*Reichle v. Howards*,
    ___ U.S. ___, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ......................................8

*Rhodes v. Prince*,
    360 Fed. Appx. 555 (5 Cir. 1/12/2010) .............................................................13

*Sama v. Hannigan*,
    669 F.3d 585 (5 Cir. 2012)................................................................................8

*Saucier v. Katz*,
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ......................................8

*Schultea v. Wood*,
    47 F.3d 1427 (5 Cir.1995) (en banc).................................................................13

*Smith v. Our Lady of the Lake Hospital*,
    96-1837 (La. 9/27/96), 680 So.2d 1163 .............................................................14

*Thompson v. Connick*,
    ___ U.S. ___, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) ......................................5

*Todd v. Hawk*,
    72 F.3d 443 (5 Cir. 1995)................................................................................13

*Tolan v. Cotton*,
    713 F.3d 299 (5 Cir. 2013) (*quoting.Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct.
    2074, 2083, 179 L.Ed.2d 1149 (2011))..............................................................8

*Torres v. County of Webb*,
  150 Fed.Appx. 286 (5 Cir. 9/27/2005) ..................................................................................5

*Webster v. City of Houston*,
  735 F.2d 838 (5 Cir. 1984) (*en banc*) ................................................................................4

*Wicks v. Mississippi State Employment Services*,
  41 F.3d 991, *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995) ...............7

*Wingo v. Kaufman County*,
  2010 WL 2307211 (N.D. Tex. 3/10/2010) ...........................................................................6

## STATUTES

42 U.S.C. § 1983 ("Section 1983") ........................................................................... passim

## OTHER AUTHORITIES

United States Constitution ........................................................................................ *passim*

Federal Rule of Civil Procedure 7 ....................................................................................13

Federal Rule of Civil Procedure 8(a)(2) .............................................................................3

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 2, 3, 4, 13

Louisiana Code of Criminal Procedure Article 220 ............................................................14

4

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PLAINTIFF ALICIA JENKINS, NATURAL TUTRIX OF DESTINY JENKINS, MINOR, AND PLAINTIFF SHAMEKA COLBERT, NATURAL TUTRIX OF DAMIYON MINOR, CHILDREN OF DAMON ABRAHAM** | **CIVIL ACTION NO. 6:13-cv-915**<br><br>**JUDGE HAIK**<br><br>**MAGISTRATE JUDGE HANNA** |

**VERSUS**

**SKYLAR DORE and THE TOWN OF BALDWIN**

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Skylar Dore ("Officer Dore") and the Town of Baldwin (the "Town") file this memorandum in support of their motion to dismiss the complaint filed by plaintiffs Alicia Jenkins, Natural Tutrix of Destiny Jenkins, Minor, and Plaintiff Shameka Colbert, Natural Tutrix of Damiyon, Minor, Children of Damon Abraham (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.       Factual Allegations

The complaint alleges that on May 10, 2012 Damon Abraham ("Abraham") went to the Town's police station "to address a protective order," and while there, was advised he was being put under arrest due to an outstanding warrant. Docket Entry 1, at 3. The complaint does not allege the charges on which Abraham was wanted.

Office Dore began to escort Abraham back to a holding cell, but instead of peaceably submitting to arrest, Abraham suddenly took off, racing out of an open door and away from the police station. Docket Entry 1, at 3. Officer Dore alone gave chase to Abraham, eventually catching up to him after a 5-6 minute foot chase (beginning when Abraham fled at 17:00 hours and ending at 17:06, when Abraham was reported in custody). Docket Entry 1, at 3-4. The

1

complaint does not allege whether Abraham was armed, or whether Officer Dore had been able to search Abraham for weapons before Abraham fled the police station.  Nor does the complaint allege which of the two, Officer Dore or Abraham, was physically larger or stronger.

When Officer Dore caught up to Abraham, he was able to tase Abraham, temporarily immobilizing Abraham so that he could be handcuffed.  Docket Entry 1, at 3.  After handcuffing Abraham, Officer Dore then tased Abraham again, in the process shouting at Abraham (in expletive-laden speech) that Abraham should not have run from Officer Dore and should not run from him again.  *Id*., at 4.

The complaint does not describe the environment or neighborhood in which Officer Dore was finally able to take Abraham into custody.  However, the complaint does allege that "at least three citizens" were present when Officer Dore (the only police officer present) tased Abraham, and that at least one of these "citizens" attempted to intervene in the arrest.  Docket Entry 1, at 4.  Also, while the complaint alleges that Officer Dore tased Abraham at least once before handcuffing him, and then "began to taze [*sic*]" Abraham after he was handcuffed, the complaint does not state how many times (before or after being handcuffed) Abraham was tased, or how long each application of the taser lasted.  *See* Docket Entry 1, at 3-4.  Nor does the complaint describe Abraham's conduct after he was handcuffed.

The complaint likewise omits any reference to whether Abraham, in handcuffs and escorted by Officer Dore, was able to walk back to the police station.  Rather, the complaint picks up at 17:17 hours, or 11 minutes after Office Dore reported that Abraham was in custody (17:06 hours), at which point Abraham was placed in a holding cell.  Docket Entry 1, at 4.  Beginning at this point, the complaint becomes very specific in its timeline:

- 17:27 – Plaintiff lying on floor of cell in "obvious distress;"

2

- 17:48 – Officer Dore called EMS;

- 17:51 – Officer Dore felt no pulse on Abraham.

Docket Entry 1, at 4-5.  After being transported to a local hospital, Abraham was later declared dead.  Docket Entry 1, at 5.

Plaintiffs assert claims under 42 U.S.C. § 1983 ("Section 1983"), including a Fourth/Fourteenth Amendment claim of "excessive force" in the arrest of Abraham (by an "Officer Jenkins," which defendants will treat for purposes of this motion as a reference to "Officer Dore"), as well as an Eighth/Fourteenth Amendment Claim based upon the tasing that occurred "after [Abraham] was in custody," *i.e.*, after he was handcuffed.  Docket Entry 1, at 5. Although less than clear from the complaint, defendants will treat the Section 1983 claim as having been brought against the Town as well as Officer Dore, given the allegation that the alleged constitutional violations occurred while Officer Dore was "in the course and scope of his employment as a police officer for the [Town]."  Docket Entry 1, at 5.  Plaintiffs also assert state law tort claims against Officer Dore and the Town.  Docket Entry 1, at 6.

## II.      Argument and Authorities

### A.      Applicable Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).  Consequently, "[d]ismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."  *National Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5 Cir. 2007) (internal quotation marks and citation omitted). While the Court is obligated to consider all properly pleaded factual allegations as true in

3

deciding a Rule 12(b)(6) motion, the Court "do[es] not presume true a number of categories of statements, including legal conclusions; mere 'labels'; ' [t]hreadbare recitals of the elements of a cause of action;' 'conclusory statements;' and 'naked assertions devoid of further factual enhancement.'" *Morgan v. Swanson*, 659 F.3d 359, 370 (5 Cir. 2011) (en banc) (internal quotation marks and brackets in original) (citation omitted), *cert. denied*, ___ U.S. ___, 132 S.Ct. 2740, 183 L.Ed.2d 614 (2012), *and cert. denied*, ___ U.S. ___, 132 S.Ct. 2740, 183 L.Ed.2d 614 (2012).  The Court may not consider factual allegations outside of the complaint.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5 Cir. 2008).

**B.      Plaintiffs Have Failed to State a Section 1983 Claim Against the Town**

The Section 1983 claim against the Town is governed by the standard under which Section 1983 liability can be imposed upon municipalities, established by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Under this standard, the Town's "liability under § 1983 may not be predicated on *respondeat superior*."  *Brumfield v. Hollins*, 551 F.3d 322, 331 (5 Cir. 2008) (citation and footnote omitted).  Rather, the constitutional violation in question, to be actionable under Section 1983, must have resulted from an official policy or custom of the Town.  *Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5 Cir. 1984) (*en banc*), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

In *Webster v. City of Houston*, 735 F.2d 838, 841 (5 Cir. 1984) (*en banc*), the Fifth Circuit conclusively defined what constitutes a "municipal policy or custom" for which a local governmental entity can be held liable under Section 1983:

> 1.      A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmaker's have delegated policy-making authority; or

> 2.      A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal

policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.  Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

As this standard suggests, "isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."  *Bennett*, 728 F.2d at 768 n. 3.  Moreover, "[i]n order to establish an actionable 'policy' under *Monell*, plaintiffs must demonstrate that the particular inadequacies which led to the constitutional violation, not simply the program itself, were the products of deliberate choice."  *Gonzales v. Ysleta Independent School District*, 996 F.2d 745, 757 (5 Cir. 1993); *see Thompson v. Connick*, ___ U.S. ___, 131 S.Ct. 1350, 1359-60, 179 L.Ed.2d 417 (2011) (discussing requirement of deliberate policy decision, made after notice of likelihood that constitutional deprivations that will ensue, to prove *Monell* liability under Section 1983 in "failure to train" cases).

Plaintiffs make no attempt to allege the existence of a Town "policy or custom" concerning the tasing of persons who resist and flee from lawful arrest, much less that the particular actions of Officer Dore at issue here were the product of a deliberate policy decision. Rather, the only allegation made by Plaintiffs concerning the Town speaks to nothing other than *respondeat superior* liability, *i.e.*, Officer Dore was "in the course and scope of his employment as a police officer for the [Town]."  Docket Entry 1, at 5.  Because *respondeat superior* liability cannot be a basis for municipal liability, the complaint fails to state a claim against the Town under Section 1983.  *See Torres v. County of Webb*, 150 Fed.Appx. 286, 291 (5 Cir. 9/27/2005) ("The claims against the city and county under § 1983 were properly dismissed under Rule 12(b)(6) because Torres failed to allege the existence of a city or county policy that resulted in the deprivation of her rights."); *Martinez v. City of San Antonio*, 2012 WL 719920, *2 (W.D. Tex. 3/5/2012) (dismissing Section 1983 claim against city in tasing case where "Martinez's

5

complaint did not identify a City policy statement, ordinance, or regulation that has been officially adopted by the City as the cause of the alleged deprivation of rights."); *Wingo v. Kaufman County*, 2010 WL 2307211, *2 (N.D. Tex. 3/10/2010) (dismissing complaint as frivolous where plaintiff's "single alleged incident is insufficient to infer that Kaufman County has an official customary policy to deny counsel.").

**C.    Plaintiffs' Section 1983 Claims Against Officer Dore Must be Dismissed**

    **1.    Plaintiffs Have No Claim Under the Eighth/Fourteenth Amendments**

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (citation omitted). Thus, the *sine qua non* of a Section 1983 claim is an allegation that a ***particular*** federally-protected right has been infringed. *Jones v. Greninger*, 188 F.3d 322,  325-26 (5 Cir. 1999). As the Supreme Court has held, excessive force claims arising in the context of an arrest are properly analyzed under the Fourth, and not the Eighth, Amendment. *Graham*, 490 U.S. at 393-95, 109 S.Ct. at 1870-71. This is in part because the protections of the Eighth Amendment do not attach until after a defendant has been convicted of an offense. *Graham*, 490 U.S. at 395 n.6, 109 S.Ct. at 1871 n. 6 (*citing Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

Plaintiffs do not allege that "excessive force" was used against Abraham while he was incarcerated after being convicted of a crime; rather, all such force was used in conjunction with an arrest. Accordingly, Plaintiffs have not alleged any facts showing Abraham was deprived of any right he enjoyed under the Eighth/Fourteenth Amendments of the United States Constitution.

    **2.    Officer Dore Enjoys Qualified Immunity**

        **a.    Qualified Immunity at the Initial Pleading Stage**

Officer Dore herein asserts the defense of qualified immunity. The nature of this defense,

and its procedural implications, have been explained by the Fifth Circuit:

> When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.  Because qualified immunity constitutes an immunity from suit rather than a mere defense to liability, the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery as inquiries of this kind can be peculiarly disruptive of effective government. Thus, adjudication of qualified immunity claims should occur at the earliest possible stage in litigation.

*McClendon v. City of Columbia*, 305 F.3d 314, 323 (5 Cir. 2002) (en banc) (internal quotation marks, ellipses, brackets, and citations omitted), *cert. denied*, 537 U.S. 1232, 123 S.Ct. 1355, 155 L.Ed.2d 196 (2003).  No discovery is permitted until the Court has overruled the initial assertion of the qualified immunity defense.  *Backe v. LeBlanc,* 691 F.3d 645, 648-49 (5 Cir. 2012).

For Plaintiffs' claims against Officer Dore to survive this motion, the complaint must allege that (1) a particular federal constitutional right was violated, and (2) the officer's actions were objectively unreasonable in light of the clearly established law at the time of the conduct in question.  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5 Cir. 2012).  Under the applicable pleading standard, "the complaint must state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity."  *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 996 (5 Cir.), *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995).  To meet this standard, the factual allegations, taken as true, must not only suggest that qualified immunity can be overcome; rather, they must actually "negate qualified immunity."  *Sama v. Hannigan*, 669 F.3d 585, 594 (5 Cir. 2012); *see Backe,* 691 F.3d at 648 ("a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.").  Because the relevant test is an objective one, the

7

underlying intent or motivation of the officer is immaterial.  *Poole*, 691 F.3d at 628.

     **b.**      **"Objective Reasonableness" in Light of "Clearly Established" Law**

This motion focuses on the second prong of the qualified immunity, *i.e.*, whether Officer Dore's actions were objectively reasonable in light of the "clearly established" law.  Conduct alleged to violate a "clearly established" constitutional right is objectively unreasonable only when "every 'reasonable official would have understood that what he is doing violates that right'," *i.e.*, only when "existing precedent . . . places the statutory of constitutional question beyond debate." *Tolan v. Cotton*, 713 F.3d 299, 306 (5 Cir. 2013) (*quoting Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011)).  Thus, "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).  In the context of an "excessive force" claim, qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (internal quotation marks and citation omitted).

To say that a particular constitutional right is "clearly established," the Court "must be able to point to controlling authority -- or a robust consensus of persuasive authority -- that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371-72 (internal quotation marks and footnotes omitted).  The state of the "clearly established" law is analyzed not as it currently exists, but rather as it existed "at the time of the challenged conduct." *Reichle v. Howards,* ___ U.S. ___, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citation omitted).  Thus, the question presented by this motion is whether, on or before

May 10, 2012, there was either a "controlling authority" or a "robust consensus of persuasive authority" holding that the same or similar conduct alleged in the complaint constitutes the violation of a constitutional right.  If the answer is "no," then Officer Dore's conduct was objectively reasonable in light of "clearly established" law, and the allegations contained in the complaint are insufficient to overcome Officer Dore's qualified immunity.

**c.     Officer Dore's Actions Were Not Objectively Unreasonable in Light of the "Clearly Established" Law as of May 10, 2012**

"Excessive force claims are necessarily fact-intensive; whether force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Deville v. Marcanetl*, 567 F.3d 156, 167 (5 Cir. 2009) (internal quotation marks and citation omitted).  The facts and circumstances of this case (both those that are alleged and those whose absence is conspicuous in light of the applicable jurisprudence) are these:

(1) Abraham was wanted on an outstanding warrant for an unspecified offense, and was at the police station in relation to a "protective order;"

(2) Abraham, after being informed that he was being placed under arrest, suddenly took off and fled the police station;

(3) Abraham led Officer Dore on a 5-6 minute foot chase away from the police station;

(4) Officer Dore, when he finally caught up to Abraham, was alone with no backup;

(5) at least three other persons, not described or identified in the complaint, were present when Officer Dore finally caught up with Abraham, and at least one attempted to "intervene" in the arrest;

(6) Officer Dore had to tase Abraham at least once to "temporarily immobilize" him long enough to get him into handcuffs;

(7) Officer Dore tased Abraham at least once after he was handcuffed, but there are no specific allegations as to the number of times Abraham was tased or the duration of each application of the taser; and

(8) there are no allegations that the suspect stopped attempting to flee/resist arrest after he was handcuffed.

9

At the time Abraham was arrested, the law reflected as a general matter that an arrestee had a right to be free from the use of "excessive force" in the making of an arrest.  *Deville*, 567 F.3d at 169.   It was also generally understood that, under the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989),  "the amount of force that [an officer] could use depended on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee."   *Id*. (internal quotation marks and brackets omitted) (citation omitted).   A straightforward application of these "*Graham* factors" shows that they all weigh in favor of Officer Dore (or due to omissions from the complaint are at best neutral), because (1) Abraham was being questioned in relation to a "protective order" and also had an outstanding warrant for charges the complaint does not identify; (2) Officer Dore could reasonably perceive he was at risk, since he had pursued a wanted man alone into unknown surroundings and arrested him in the presence of at least three unidentified persons, at least one of whom attempted to "intervene" in the arrest; and (3) Abraham was indisputably resisting/fleeing a lawful arrest.   Thus, a consideration of the *Graham* factors alone suggests that qualified immunity is warranted.

This conclusion is buttressed by this Court's recent decision in *Rakestrau v. Neustrom*, 2013 WL 1452030 (W.D. La. 4/8/2013) (Hanna, M.J.), another case in which a suspect died shortly after being tased several times in the course of an arrest.   In *Rakestrau*, a person suspected of having been involved in a narcotics transaction was approached by an undercover police officer. *Rakestrau*, 2013 WL 1452030, at *1.  Rather than submitting to arrest, the suspect resisted the officer's requests, and after a brief struggle pulled away from the officer and began to flee.  *Id*., at *2.  The officer gave chase, and the suspect turned on the officer.  *Id*.  The officer tased the suspect, bringing him to the ground.   *Id*.  Then, while the suspect was still on the

ground (and not moving), the officer tased the suspect again, and this time the electrical charge lasted 9 seconds (signaling that the officer was intentionally holding down the taser trigger to perpetuate the charge beyond the taser's 5 second minimum). *Id*., at *2, *7.  The suspect was nonresponsive at that point, and was subsequently declared dead. *Id*., at *3.

This Court began by observing that in the Fifth Circuit the use of a taser is not the use of "deadly force," even when the suspect dies following the use of the taser.  *Rakestrau*, 2013 WL 1452030, at *7.  The Court also observes that the qualified immunity inquiry excuses reasonable mistakes, both as to the existence of exigent circumstances facing the officer, and as to the legality of the officer's action under then-existing law.  *Id*., at *9.  The Court then opined that "excessive force" cases involving the use of tasers generally fall within one of two categories: (1) cases where "excessive force" was found not to exist, involving situations where the taser was used at a time when the officer did not have "control" of the suspect and the suspect was actively resisting arrest by struggling with, threatening, or disobeying the officer; and (2) cases where "excessive force" was found to exist, involving situations where the taser was used after the suspect "was already detained and had been subdued." *Id*., at *10.  The Court, considering the facts before it, concluded that as to the officer's use of the taser a second time (while the suspect was immobilized and on the ground), "[i]t would not be plain to *every* reasonable officer that the use of the taser again was unlawful under these circumstances *unless* it was clear that [the suspect] was completely subdued, and therefore, not a flight risk." *Id*., at *11.  Accordingly, the Court held that the defendant police officer was immune from suit. *Id*.

The facts of this case, like those of *Rakestrau*, do not fall within the second general category identified by the Court.  Here, like the police officer in *Rakestrau*, Officer Dore had no backup and was pursuing a suspect whose precise criminal activities and proclivities were

unknown.  The allegations in the complaint, which omit any description of Abraham's size and strength *vis-à-vis* Officer Dore, as well as any description of Abraham's conduct after he was handcuffed, do not suggest that Abraham was "completely subdued, and therefore, not a flight risk" after being handcuffed.  *See Clark v. Ware*, 873 F.Supp.2d 1117, 1120-21 (E.D. Mo. 2012) (police officer who tasered suspect twice after he was handcuffed entitled to qualified immunity from excessive force claim, where suspect remained uncooperative and belligerent).  Moreover, unlike the situation in *Rakestrau*, in this case there were other persons present at the site of the arrest, and at least one of those persons allegedly attempted to "intervene" in the arrest on Abraham's behalf.  Finally, the complaint does not allege that the use of the taser after Abraham was handcuffed was of the same sort of extended duration that the Court found so troubling when used on the immobilized suspect in *Rakestrau*.  2013 WL 1452030, at *11 ("While the nine second cycle is troubling to this Court, given the conditions at the moment, when a five second cycle would have been the minimum, this Court cannot say that the additional four seconds, while perhaps constituting excessive force, violated clearly established law . . . .").

In sum, because "this Court cannot conclude that none of the *Graham* factors was plainly present," *id.*, at 11 (citation omitted), on the allegations as they currently stand, Officer Dore is entitled to qualified immunity.[1]  It is possible that Plaintiffs, within the confines established by Rule 11, may be able to allege with the required "detail and particularity" facts which "negate"

---

[1] Moreover, at the time of the conduct at issue in the complaint, there was jurisprudence within this circuit that indicated behavior far more egregious than that allegedly undertaken by Officer Dore did not constitute "excessive force."  In *Anderson v. McCaleb*, 2011 WL 672330 (E.D. Tex. 2/15/2011), *rev'd*, 480 Fed. Appx. 768 (5 Cir. 6/15/2012), the district court found qualified immunity applied even though the suspect (who had fled from a traffic stop) claimed that, while lying supine and not resisting arrest, he was punched repeatedly and tasered five or six times by police officers.  While this ruling was ultimately reversed by the Fifth Circuit, that reversal did not occur until more than a month *after* Abraham's death.  Furthermore, as the Fifth Circuit later explained in *Poole* (holding that officers who used armholds and a taser to arrest the plaintiff for a traffic offense were entitled to qualified immunity), *McCaleb* did not hold that the use of force in that case was excessive, but only that the plaintiff's evidence was sufficient to demonstrate the existence of an actionable "injury."  691 F.3d at 632.

12

Officer Dore's assertion of qualified immunity; Plaintiffs apparently have access to witnesses and an official report that they have chosen to selectively cite in their original complaint. Qualified immunity cannot be overcome, however, by the omission of facts material to the defense, in the hope that such factual lacunae can be redressed by later discovery.  If Plaintiffs have a good faith basis for alleging facts that align Officer Dore's conduct with a "controlling authority" or "robust consensus of authority" holding such conduct unconstitutional, then they must make those allegations now; otherwise, Officer Dore enjoys qualified immunity.[2]

**D.      Plaintiffs' State Law Claims Must Also Be Dismissed**

In Louisiana, an excessive force claim is addressed by general tort law; thus, Plaintiffs must prove (1) Officer Dore owed Abraham a duty of care, (2) Officer Dore breached that duty, (3) the risk of harm was within the scope of the protection afforded by the duty breached, and (4) the conduct in question was a cause-in-fact of the resulting harm.  *Hall v. City of Shreveport*, 45,205 (La. App. 2 Cir. 4/28/10), 36 So.3d 419, 422.   In the excessive force context, the applicable tort law principles are tempered by La. C.Crim.Pro. art. 220, which authorizes police officers to use "reasonable force" to effect an arrest.

Whatever its theoretical vagaries, in practice "Louisiana's excessive force tort mirrors its federal constitutional counterpart." *Deville*, 567 F.3d at 172.  Accordingly, the same analysis that

---

2 The Fifth Circuit has held that when an initial complaint has been found insufficient to overcome an assertion of qualified immunity, the plaintiff should be permitted an opportunity to supplement those allegations via the reply authorized by Fed. R. Civ. Pro. 7(a)(7).  *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5 Cir.1995) (en banc).  Although typically applied when the qualified immunity defense is raised via answer, permitting supplementation via a reply is also the preferred procedure when the defense is raised by a Rule 12 motion.  *Todd v. Hawk*, 72 F.3d 443, 446 (5 Cir. 1995).  If the Court feels that the reply still fails to meet the required threshold, then dismissal of the complaint (as illuminated by the reply) is proper.  *See Rhodes v. Prince*, 360 Fed. Appx. 555, 557-58 (5 Cir. 1/12/2010) (affirming dismissal of complaint after Rule 7 reply failed to negate assertion of qualified immunity at pleading stage).  Accordingly, to the extent the Court feels it is warranted, the Court may order Plaintiffs to file a reply that supplements their initial factual allegations.  In any case, whether before or after such reply, Officer Dore prays that this Court dismiss the Section 1983 claims against him on the basis of qualified immunity.

13

warrants dismissal of the Section 1983 "excessive force" claim against Officer Dore also justifies dismissal of the corollary state law claim against him.  *Rakestrau*, 2013 WL 1452030, *12 (dismissing state law tort "excessive force" claims where Section 1983 claims dismissed on qualified immunity grounds).  Furthermore, the dismissal of Office Dore on these grounds requires that the Town too be dismissed, since the Town's alleged liability on these state law claims is entirely derivative of that of Officer Dore.  *Smith v. Our Lady of the Lake Hospital*, 96-1837 (La. 9/27/96), 680 So.2d 1163, 1164.  For these reasons, Plaintiffs' state law claims should be dismissed, with prejudice.

### III.    Conclusion

For the reasons set forth herein, all claims against Officer Dore and the Town should be dismissed, with prejudice.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    /s/ F. Scott Kaiser
        F. Scott Kaiser, Bar Roll No. 14411
        Paul LeBlanc, Bar Roll No. 23186
        II City Plaza | 400 Convention Street, Suite 1100
        Baton Rouge, Louisiana 70802-5618
        Post Office Box 4412
        Baton Rouge, Louisiana 70821-4412
        Telephone: 225-346-0285
        Facsimile:  225-381-9197
        Email: kaisers@phelps.com
        leblancp@phelps.com

ATTORNEYS FOR SKYLAR DORE AND THE TOWN OF BALDWIN

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing *Memorandum in Support of Motion to*

*Dismiss* on counsel for Plaintiffs, to wit

Garron Matthew Johnson (#26940)       John L. Young (#2199)
1631 Elysian Fields Avenue            915 St. Louis Street
New Orleans, LA  70117                New Orleans, LA  70112
gmjlawyer@hotmail.com                 jlylaw@aol.com

Joseph J. Long (#25968)
251 Florida Street, Suite 308
Baton Rouge, LA  70801
josephjlong@juno.com

via the Court's electronic service, this 12th day of August, 2013.

 /s/ F. Scott Kaiser

15

PD.9725612.1